IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

**MARY J. MCCORMICK,**

    **Plaintiff,**

v.                                                                          CASE NO. 6:12-cv-01454

**MICHAEL J. ASTRUE**[1]**,**
**Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Claimant's, Mary J. McCormick, application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are the Complaint (ECF No. 1), Plaintiff's Brief in Support of Claim (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 13) and Plaintiff's Reply Brief (ECF No. 14).

Claimant, Mary J. McCormick, filed an application on November 9, 2009[2] (Tr. at 150). In her application, Claimant alleged disability beginning August 15, 2005.  The claim was denied initially and upon reconsideration (Tr. at 82-90, 93-97).  Claimant filed a written request for

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.
[2] Claimant's application summary for disability insurance benefits states that "I was receiving Workers' Compensation, Public Disability or Black Lung Benefits which ended on October 13, 2009" (Tr. at 150).

1

hearing on July 7, 2010 (Tr. at 106-107). A hearing was held on August 3, 2011, in Charleston, West Virginia. In the Decision dated August 18, 2011, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to benefits (Tr. at 22-36).

On October 25, 2011, Claimant requested a Review by the Appeals Council (Tr. at 15). Claimant requested 45 days to submit an argument. (*Id.*) The Appeals Council acknowledged receipt of additional evidence and made Claimant's letter in support of request for review and expedited consideration part of the record (Tr. at 5). Notice of Appeals Council Action dated April 26, 2012, notified Claimant that her request for review was denied because the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). On May 9, 2012, Claimant brought the present action seeking judicial review of the administrative decision (ECF No. 1).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 24). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of arthritis of the cervical spine, residuals of left shoulder strain, affective disorder and frontal lobe volume loss resulting in cognitive loss (Tr. at 24). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 26). The ALJ then found that Claimant has a residual functional capacity ("RFC") for

light work, reduced by nonexertional limitations[3] (Tr. at 28). As a result, Claimant cannot return to her past relevant work. (*Id*.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as mailroom clerk, price marker and sorter (Tr. at 35). On this basis, benefits were denied (Tr. at 36).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

---

[3] Claimant could only occasionally crawl as well as climb ladders, ropes and scaffolds. She could occasionally perform pushing or pulling with the left upper extremity. She could have no concentrated exposure to extreme cold, humidity, vibration or hazards. She would also be limited to work in a low stress environment with no more than occasional changes in work setting. She could perform only simple, routine, repetitive tasks (Tr. at 28).

Claimant's Background

Claimant was born November 22, 1959 (Tr. at 150). Claimant acquired an Associate Degree in nursing (Tr. at 50). She worked in hospital care between 1988 and 2009 (Tr. at 266). From April 1994 to January 1998, Claimant ran a homework hotline business for local elementary and middle schools (Tr. at 265). From 1998 to 2005, Claimant worked as a telephone triage nurse for various health maintenance organizations (Tr. at 261). Claimant's supervisor at Intellicare asked her to resign from her position of Registered Nurse on July 31, 2005 (Tr. at 261, 267). Claimant's remarks regarding her termination include that she "began having severe depression and anxiety in Aug. '04" and that her "concentration and focus worsened in May '05" (Tr. at 267). Claimant completed computer software training in April 2009 (Tr. at 218).

The Medical Record

Claimant had an office visit with Appalachian Family Medicine (AFM) on October 14, 2004, regarding anxiety and stress with her husband (Tr. at 379). Claimant's check-up on July 16, 2004, noted mild depression. (*Id.*) Claimant was assessed on May 24, 2004, as having anxiety (Tr. at 380). On January 31, 2005, Claimant reported to Charleston Area Medical Center because she was having episodes of losing consciousness for two or three seconds while driving. The emergency room (ER) physician believed that this could be a side effect of a recent prescription for Cymbalta. The ER doctor advised her to discontinue the Cybalta and to follow up with her primary care physician, Dr. Hyla Harvey at Appalachian Family Medicine[4] (Tr. at 351).

---

[4] Dr. DiCristofaro and Dr. Hyla Harvey are colleagues that both treat Claimant at Appalachian Family Medicine.

Claimant asserts in her disability application that she noticed difficulties in concentration, memory and focus in May 2005. On June 13, 2005, Claimant attended a visit at Appalachian Family Medicine (AFM) for anxiety. She reported that her divorce should be final soon and that she was going to counseling for grief. Claimant did not complain of memory loss during this visit (Tr. at 376). On March 21, 2005, and February 21, 2005, Claimant reported stress over her divorce but did not mention memory loss (Tr. at 376-377). At her appointment on January 10, 2005, Claimant complained of stomach pain, anxiety and depression. At her AFM visit on August 3, 2005, Claimant asserts that her memory loss is getting worse. Claimant reported that her supervisor at work talked to her about her current inability to effectively perform her job and raised the question about short term disability (Tr. at 374). Claimant stated that she has spent most of the past 5 years depressed. Claimant was assessed as having bipolar disorder (Tr. at 375).

On August 10, 2005, Dr. Harvey completed a long-term disability form for Unum Provident Insurance (Tr. at 427). Dr. Harvey diagnosed Claimant with anxiety and cyclothymia, a chronic, fluctuating mood disturbance involving numerous periods of depressive symptoms. Dr. Harvey stated Claimant's restrictions and limitations began on July 29, 2005. Dr. Harvey listed Claimant's restrictions as "unable to perform work duties due to severe anxiety, depression and related memory problems." (*Id.*) On October 31, 2005, Dr. Harvey received a letter from Unum Provident requesting copies of all of Claimant's medical records dated September 20, 2005, through October 31, 2005 (Tr. at 420). On February 13, 2006, Unum Provident sent Dr. Harvey a letter requesting all of Claimant's medical records from November 9, 2005, to the present.

On September 9, 2006, Unum Provident notified Claimant that her short-term disability claim had been reviewed and that her request for benefits was approved. The letter stated her disability date had been determined to be August 3, 2005 (Tr. at 185). On February 13, 2006, Claimant wrote a letter to a Unum Provident case worker regarding Claimant's long-term disability claim. Claimant stressed that she is bipolar and depressed. The letter stated "my financial situation is getting out of control because of having no income since November 8, 2005 and I'm sure you can understand, that is causing me a great deal of anxiety right now" (Tr. at 401).

Claimant attended an AFM visit on September 19, 2005. The notes and assessment did not mention memory loss but did state that she was nervous, depressed and anxious. The assessment stated "She is still unable to interact normally in a business/work environment due to severe depression, inability to cope, feeling overwhelmed" (Tr. at 372). At an AFM visit on October 12, 2005, Claimant was still depressed and claimed to cry daily. Memory loss was not mentioned in the notes (Tr. at 371). Notes from Claimant's visit on August 29, 2005, address her anxiety, depression and excessive worrying but does not mention memory loss (Tr. at 373).

Notes from Claimant's visit on November 8, 2005, state that she was still depressed and reported crying a few times a week. Claimant reported that she had been partaking in more exercise on the treadmill and biking outside when the weather permitted (Tr. at 370). Notes from Claimant's AFM visit on December 7, 2005, address Claimant's concerns about memory loss by assessing that "most of the memory issue is related to her underlying depression and psych disorders and less related to her medications" (Tr. at 369).

On January 24, 2006, Claimant asserted at an AFM visit that she was still having problems with her memory. The notes state that Claimant was "definitely still depressed" (Tr. at 367). The notes state that Claimant "admits today that she actually got married in Virginia when she was there for about 2 months and is very concerned about this." (*Id.*) The assessment from that visit was that Claimant suffered from bipolar disorder and depression. Claimant inadvertently quit taking her prescriptions for Wellbutrin and Seroquel. Claimant expressed disbelief that she impulsively got married based on the fact that she just finalized a divorce. In assessment, it was emphasized to Claimant that her impulsive decision to get married "is probably a part of her bipolar disorder… which is uncontrolled." (*Id.*)

Claimant was evaluated by Psychologist Nancy Canterbury on March 16, 2006. Dr. Canterbury examined Claimant at the request of Claimant's treating physician, Dr. Harvey, at AFM. Dr. Canterbury noted that Claimant had been married three times with her last marriage occurring in November 2005. Claimant lived with her husband in Virginia for one and a half months before separating and Claimant moving to West Virginia (Tr. at 354). Claimant reported to Dr. Canterbury that she enjoys reading, hiking and feeding and watching birds. (*Id.*) Dr. Canterbury performed an IQ test on Claimant. Claimant scored a verbal IQ of 98, performance IQ of 86 and a full scale IQ of 93 (Tr. at 355). Dr. Canterbury noted that "if no true physical causes can be attributed to her memory difficulties; she could be misinterpreting symptoms of anxiety as a medical problem" (Tr. at 358). It was recommended to Claimant that she get a second opinion from a psychiatrist who specializes in the treatment of bipolar disorders. (*Id.*)

On March 31, 2006, Claimant wrote a letter to the Social Security Administration regarding Disability Benefits. In the letter Claimant stated that she still felt depressed and that she had been under the care of a physician for ongoing treatment for depressive episodes since

May 2004, and had intermittently received treatment for depression for more than 20 years (Tr. at 234).

On May 2, 2006, Sean C. DiCristofaro, M.D. with AFM notes state that "perceived memory problems (most likely) related to her wavering attention/concentration" (Tr. at 365). The notes from Claimant's follow-up visit for "bipolar disorder" state that "she had some short term memory problems, which are most likely related to her anxiety and depression, as well as bipolar disorder." (*Id.*) Claimant reported that her mood was "much better" and that she was feeling less anxious and nervous (Tr. at 366).

On April 24, 2006, Claimant was examined by Neurologist Samina Kazmi, M.D. (Tr. at 490). An MRI of the brain was performed on May 4, 4006, and an electroencephalograph (EEG) was administered on May 9, 2006. The MRI showed bilateral isolated anterofrontal lobe volume loss, "which should raise clinical concern for the possibility of frontotemporal dementia…This is also known as Picks Disease" (Tr. at 495). The EEG was mildly abnormal (Tr. at 497).

On July 21, 2006, State medical consultant John Todd, Ph.D. indicated that Claimant had the mental capacity "to perform routine, repetitive activities in a low stress work environment that can accommodate her physical limitations" (Tr. at 518). Dr. Todd stated that Claimant's "functional capacity does not exceed moderate and therefore does not require a RFC allowance." (*Id.*)

Claimant began working at Thomas Memorial Hospital from April 27, 2009, to May 19, 2009 (Tr. at 275). While working as a Registered Nurse at Thomas Memorial Hospital, Claimant injured her left shoulder lifting a patient that was trying to climb out of a hospital bed (Tr. at

719). Claimant began physical therapy approximately May 16, 2009, at Charleston Physical Therapy[5] (Tr. at 765).

Joseph E. Grady, II, M.S., Tri-State Occupational Medicine, Inc., performed an Independent Medical Evaluation (IME) on Claimant on September 29, 2009. The IME was to evaluate an alleged injury to Claimant's cervical spine and left shoulder that she sustained on May 16, 2009 (Tr. at 688-695). Dr. Grady determined that it would be difficult for Claimant to return to her strenuous job until she completes the work hardening program. By letter dated October 30, 2009, Claimant was notified by Old Republic Insurance Company that she was awarded 4% Permanent Partial Disability for permanent impairment resulting from Claimant's work related left arm/shoulder and neck injury (Tr. at 190).

Claimant's physical therapy exercises included lifting up to 25 pounds and walking on the treadmill for over two hours a day with a small incline. Claimant received pain treatment from H.S. Ramesh, M.D., who diagnosed cervical disc degeneration as well as cervical and left shoulder strain. Dr. Ramesh determined that Claimant could return to unlimited activities after completing a four-week "work hardening" physical therapy program. Claimant began the program but failed to fully complete the physical therapy program. Claimant completed nine out of the ten possible sessions[6]. At the end of October 2009, the physical therapy notes confirmed that Claimant was lifting 25 pounds and walking on an inclined treadmill for 70 minutes. Dr. Ramesh opined on several occasions that Claimant should be on "modified" work duty with a

---

[5] Claimant was referred by Dr. Ramesh, her treating pain physician.
[6] Claimant failed to follow the prescribed treatment of completing her work hardening program. Although the ALJ did not base his decision on 20 CFR 404.1530(b), the Code of Federal Regulations clearly states "If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."

limitation of lifting, pushing, or pulling no more than 25 pounds. The ALJ gave significant weight to this opinion because it was consistent with the residual functional capacity limiting Claimant to light work.

Claimant filed her application for disability on November 9, 2009. At the state agency's request, Claimant attended a consultative examination with licensed psychologist Lisa Tate, M.A., on January 19, 2010 (Tr. at 894-902). Claimant completed a psychological evaluation with the West Virginia Disability Determination Service (Tr. at 894-900). A test was administered on Claimant to assess her intellect. Claimant scored a verbal IQ rating of 86, performance IQ of 84 and a full scale IQ score of 84 (Tr. at 879). The psychological evaluation diagnosed Claimant with depressive disorder NOS (depressive disorder not otherwise specified), self-reported degenerative brain disease, arthritis in the ankles, knees, and hips and problems with the left arm, shoulder and neck (Tr. at 898). On examination, Claimant was found to have normal immediate, recent and remote memory. Claimant recalled 4 out of 4 words immediately and after a 30 minute delay. Claimant exhibited normal concentration, mildly deficient comprehension and moderately deficient pace. Claimant was found to have moderately deficient pace and social functioning (Tr. at 899).

On February 4, 2010, state agency psychologist Frank Roman, Ed.D. performed a psychiatric review of Claimant. He found that Claimant did not suffer from any severe mental impairments (Tr. at 903).

On February 10, 2010, Rabah Boukhemis, M.D. conducted a physical residual functional capacity assessment. The assessment was for Claimant's spinal and neck strains. Dr. Boukhemis found that Claimant should be limited to occasionally carrying 50 pounds, frequently

lift or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8 hour workday. She should sit for a total of about 6 hours in a workday. Per the assessment, Claimant was not limited in her ability to push and/or pulled (Tr. at 918-925). Dr. Boukhemis recommended that Claimant return to light work.

Claimant received treatment from neurologist Joby Joseph, M.D. in May 2010. Dr. Joseph reported Claimant exhibited normal strength, tone, sensation, reflexes and coordination. This reported information fails to support Claimant's allegations of extreme physical limitations. Claimant's chief complaint to Dr. Joseph was her self-reported possibility that she had Pick's Disease (Tr. at 957). Consequently, Dr. Joseph diagnosed her with Pick's Disease.

A Disability Determination Examination was conducted by Ernie Vecchio, M.A., on May 18, 2010, for the West Virginia Disability Determination Service. General observations noted that Claimant drove herself to the appointment and appeared to be depressed and tearful. Claimant self-reported that she has Pick's Disease. Under mental status examination, Claimant's assessment stated her attitude was cooperative, social behavior was within normal limits, thought content was focused, perception was within normal limits and insight was fair. Her immediate memory was within normal limits, she could recall four out of four words immediately. Her recent memory was mildly deficient, she could recall three out of four words following a 30 minute delay. The mental status examination reported remote memory, concentration, persistence and pace were within normal limits (Tr. at 963-964).

A Disability Determination Examination was conducted by Alfredo Velasquez, M.D., on May 24, 2010, for the West Virginia Disability Determination Service. Claimant alleged to have aches and pains in the neck, shoulder, knees and ankle (Tr. at 989). Claimant was examined to

be 5 feet 4 inches tall and weighing 208 pounds. Dr. Velasquez diagnosed Claimant as having "aches and pain of the joints, but no definitive findings" (Tr. at 991).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ erred in finding that the Claimant was not disabled as of December 31, 2010, the date she was last insured for Social Security Benefits (ECF No. 10). Claimant asserts there was not substantial evidence to support the vocational expert's testimony and the ALJ erroneously relied only on selective portions of reports and evidence.

The Commissioner argues that substantial evidence supports the ALJ's finding that Claimant has not met her burden of proving that her impairment meets or equals the requirements of a degenerative brain disorder and that Claimant failed to demonstrate that her condition deteriorated to the point where she had work-preclusive functional limitations (ECF No. 13). Additionally, the ALJ determined that Claimant could perform unskilled, light work.

Claimant's pain specialist Dr. Ramesh opined that Claimant should perform modified duties with limitation of not lifting, pushing or pulling more than 25 pounds. The ALJ gave this opinion significant weight because performing light work is consistent with the residual functional capacity reported by Dr. Ramesh.

The ALJ gave little weight to state agency consultants who opined that Claimant remained capable of medium exertion activities (Tr. at 31). Although Claimant did not finish her physical therapy program, physical therapy notes confirm the Claimant was lifting 25 pounds and walking on an inclined treadmill for 70 minutes. A vocational expert (VE) testified at the administrative hearing (Tr. at 35). The ALJ asked the VE to assume a hypothetical individual of Claimant's age, education and experience and residual functional capacity. The Vocational

Expert testified that in consideration of the ALJ's hypothetical, Claimant could perform jobs in the regional or national economy including mail clerk, price marker and sorter. (*Id.*) The vocational expert's testimony was consistent with the Dictionary of Occupational Titles.

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity

to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this decision, the ALJ found that Claimant has mild restriction of activities of daily living and social functioning (Tr. at 26). The ALJ opined that Claimant has moderate difficulties in regards to concentration, persistence and pace. The ALJ explained that in this area of functioning, Claimant frequently informed health care providers she had difficulties with concentration and memory (Tr. at 27). However, as the ALJ pointed out, Claimant acknowledged driving a car, shopping in stores, shopping on a computer, watching television, reading magazines and bird watching (Tr. at 27, 251-259). The ALJ found that all of these activities require a certain level of concentration (Tr. at 28). In the fourth functional limitation listed in 20 C.F.R. § 404.1520a (2012) to determine mental impairment, the ALJ rated that Claimant does not have any episodes of decompensation of extended duration in persistence or pace. (*Id.*)

Claimant asserts that Pick's Disease or frontotemporal dementia is among those identified by the Social Security Administration as a mental condition that qualifies as a "compassionate allowance." Frontoemporal Dementia/Pick's Disease is listed on the Social

15

Security Administration's Program Operations Manual System (POMS) which became effective October 24, 2008. POMS suggests the impairment must meet Listing 12.02 requirements. 20 C.F.R. 404 Subpart P, Appendix 1 lists the criteria necessary for the Claimant to demonstrate her mental impairment is so severe that she qualifies as disabled. Listing 12.02 deals with organic mental disorders. Listing 12.02 describes organic mental disorders as "Psychological or behavioral abnormalities associated with a dysfunction of the brain." To demonstrate disability Claimant must satisfy requirements in paragraphs (A) and (B) or illustrate the requirements in paragraph (C) are satisfied.

The ALJ found that evidence did not satisfy Listing 12.02's requirements in paragraphs (B) and (C). Paragraph (A) requires Claimant to demonstrate a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or
2. Memory impairment, either short-term, intermediate, or long term; or
3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbances in mood; or
6. Emotional liability and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 IQ points from premorbid levels.

Paragraph (B) requires Claimant's mental impairment result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

The ALJ concluded that Claimant did not satisfy the requirements of paragraph (B). The ALJ relied on two functional reports evaluating Claimant. One functional report was performed in 2006 (Tr. at 251-269) and the second was performed in 2010 (Tr. at 894-925). Claimant's

assertion that the ALJ did not rely upon a recent functional report is without merit (ECF No. 10). Claimant refers to a functional report performed in 2009 and asserts it illustrated Claimant could meet the requirements of Listing 12.02 paragraph (B). The 2009 report does not rate the Claimant's functional capacities as do the 2006 and 2009 functional reports. The 2006 report concludes with a vocational analysis that states Claimant's "physical RFC is medium exertional with some postural and environmental limitations"….Claimant's "mental assessment is non-severe"…. And Claimant "is not disabled" (Tr. at 307).

The ALJ found insufficient evidence for Claimant to establish the criteria for paragraph (C). Paragraph (C) requires "medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or physo-social support and one of the following:"

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Claimant had no episodes of decompensation. The record demonstrated that Claimant was functioning well enough she could go out alone, care for pets, grocery shop, visit family, go to the library and eat out at least once a week.

Credibility Determination

Substantial evidence supports the ALJ's finding that Claimant's testimony and alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the

intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 29). The ALJ found that Claimant's psychological allegations, as well as her physical limitations, were not credible. (*Id.*) The ALJ further explained his reasons for finding Claimant not entirely credible; including the objective findings, treatment notes, her failure to complete physical therapy and her self-reported daily activities (Tr. 29-31).

It is well-settled that a claimant's allegations alone will not establish that she is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the AJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Claim, and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b),

Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 20, 2013

Dwane L. Tinsley
United States Magistrate Judge