IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

MARY J. MCCORMICK,

            Plaintiff,

v.                                                 CIVIL ACTION NO. 6:12-cv-01454

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

            Defendant.


**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Mary J. McCormick's Complaint [ECF 1] seeking review of the final decision of the Commissioner of Social Security ("Commissioner").[1] By standing order entered September 2, 2010, and filed in this case on May 9, 2012, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation for disposition ("PF&R"). Following Magistrate Judge Stanley's retirement, this case was referred to United States Magistrate Judge Dwane L. Tinsley for submission of a PF&R. Magistrate Judge Tinsley entered his PF&R on August 20, 2013, which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 13.) On September 4, 2013, Plaintiff filed timely objections to the PF&R (ECF 17).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, replacing the former Social Security Commissioner, Michael J. Astrue, the original Defendant in this case. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is automatically substituted as the Defendant.

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is not inconsistent with this Opinion, and **AFFIRMS** the final decision of the Commissioner.

## I.  PROCEDURAL BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R, but those further facts necessary for this Court's de novo review are recited herein.  In short, Plaintiff filed applications for disability insurance benefits in November 2009.  Plaintiff alleged a variety of issues including health problems, most notably, certain mental impairments caused by Pick's disease.[2]   Plaintiff claimed that her disability began on August 15, 2005. (ECF 7–3 at 4, 7 & ECF 7–8 at 24–27.)  Plaintiff's claims were denied initially as well as upon reconsideration.

Upon Plaintiff's request, a hearing was held before Administrative Law Judge Thomas W. Springer ("ALJ") on August 11, 2011.  In addition to Plaintiff's testimony, the ALJ heard the testimony of a vocational expert, Nancy Shapero.  (ECF 7–3 at 7–39.)  Documentary evidence was also made part of the record.  The ALJ issued a fifteen-page unfavorable decision dated August 18, 2011.  (ECF 7–2 at 23–37.)  The Appeals Council denied review of the ALJ's decision.  (ECF 7–2 at 2.)  Thereafter, Plaintiff filed her Complaint in this Court.  (ECF 1.)

## II. STANDARD OF REVIEW

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to

---

[2]   According to the National Institutes of Health, Pick's disease is a form of dementia and is associated with the shrinking of the frontal and temporal anterior lobes of the brain.   National Institutes of Health, National Institute of Neurological Disorders and Stroke (Last updated June 4, 2013) http://www.ninds.nih.gov/disorders/picks/picks.htm.  The disease progresses steadily and often rapidly.

which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## III. DISCUSSION

The Court will now review de novo those parts of the PF&R to which Plaintiff has made a proper objection. Plaintiff filed timely objections to the PF&R (ECF 17). For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court defers to the Commissioner's decision. *Johnson*, 434 F.3d at 653. "[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5) (2006); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*1. Plaintiff's First and Second Objections*

Plaintiff first contends that the magistrate judge failed to address two related arguments contained in Plaintiff's brief in support of her claim (ECF 10). Specifically, Plaintiff argues that the PF&R failed to address her argument that the ALJ failed to consider her 2009 Function Report. Plaintiff argues that, although the PF&R expressly references the 2006 Function Report and also makes reference to a "second" Function Report that is dated 2010, the magistrate judge's citation to the 2010 report is in error because the citation refers to a psychological evaluation and not the 2010 Function Report.[3] Plaintiff states that the ALJ's and magistrate judge's failure to consider the Function Report "completed by Ms. McCormick in 2009 is [sic] crucial to an accurate determination of her functioning and the credibility of her testimony at the hearing." (ECF 17 at

---

3 As explained below, there were not two but rather three Function Reports in the record before the ALJ. They are dated 2006, 2009, and 2010, respectively. The Court's review of the ALJ's decision demonstrates that all three Function Reports were admitted into evidence and attached as exhibits to the ALJ's decision. The 2006, 2009, and 2010 reports were identified as Exhibits 10E, 18E, and 22E, respectively. Thus, the PF&R's reference to the 2010 Function Report as the "second" report is chronologically erroneous.

4

2.) Plaintiff contends that this failure "was crucial because Ms. McCormick's mental functioning deteriorated between 2006 and 2009" as a consequence of Pick's disease. (*Id.* at 1–2.) As such, Plaintiff reasons that the magistrate judge could not have properly considered her argument that the ALJ failed to consider the 2009 report.

Plaintiff's second argument is intertwined with her first. She contends that because the ALJ allegedly failed to consider the 2009 Function Report, he did not consider "all the evidence when he found that Ms. McCormick's testimony of her symptoms was not credible." (ECF 17 at 3.) Plaintiff claims the ALJ thus committed legal error because credibility findings must be based on all the evidence. (*Id.*)

The Court rejects both of these contentions. Here, the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and is not the product of application of incorrect legal standards. The record includes three "Function Reports". (ECF 7–7 at 57–65; ECF 7–8 at 41–49 and 55–63.) These reports are form Social Security Administration questionnaires that were completed by Plaintiff. The forms ask claimants to respond to a series of questions concerning how their illnesses, injuries, and conditions limit their daily activities. These reports were filled out by Plaintiff in 2006, 2009, and 2010. (ECF 7–7 at 57–65 and ECF 7–8 at 41–49, 55–63.)

Plaintiff is correct that the PF&R's record citation to the 2010 Function report is erroneous. This error does not, however, warrant reversal of the Commissioner's decision for several reasons. To begin, all three Function Reports are listed on the "List of Exhibits" attached to the ALJ's decision (ECF 7–2 at 38–44) and more than once the ALJ stated that he had carefully considered all of the evidence. (*Id.* at 23, 25, 28, 29.) Plaintiff is correct that the ALJ only expressly

5

references the 2006 Function Report in his written decision. But Plaintiff fails to persuade the Court that the ALJ's failure to expressly reference the 2009 Function Report means that the ALJ failed to consider the substance of that report. For one thing, many of Plaintiff's answers in the 2006 and 2009 reports are nearly identical. For example in both reports Plaintiff states that she is able to make her breakfast, check her email, watch television, visit with her family. In both reports she says: (1) she has problems with concentration, memory, and making decisions; (2) the type of household chores Plaintiff was able to do is the same; (3) she is able to drive a car and shop for groceries; (4) her ability to read books is affected because she cannot focus or understand; and (5) her social interactions are affected by her ailments.

Additionally, although the 2009 report indicates that Plaintiff had begun living with her family rather than living alone, in numerous respects the 2009 Function Report indicates that Plaintiff has *less* severe limitations than she reported on the 2006 Function Report. For example, in the "Personal Care" section of the 2006 Function Report, Plaintiff described various difficulties she had with bathing, caring for her hair, and getting dressed. (ECF 7–7 at 58.) In the "Personal Care" section of the 2009 Function Report, Plaintiff indicated that she had "[n]o [p]roblem" with her personal care. (ECF 7–8 at 42.) Similarly, in the 2006 report, Plaintiff stated that she needed special reminders to take care of her personal needs and grooming (ECF 7–7 at 59), whereas in the 2009 report, Plaintiff stated she needed no such reminders. (ECF 7–8 at 43.) In the 2006 report, Plaintiff state that she went outside "1–2 times a week" (ECF 7–7 at 60), whereas in the 2009 report, Plaintiff indicated that she went outside "2–3 times a week." (ECF 7–8 at 44.) In the 2006 report, Plaintiff stated that she drove a car but that she got "disoriented" at times. (ECF 7–7 at 60.) In the 2009 report, Plaintiff simply indicated that she drove a car. She said nothing

about getting disoriented when she drove. In the 2006 report, Plaintiff stated that she was able to pay bills, count change, and use a checkbook "with assistance". (ECF 7–7 at 60.) In 2009, Plaintiff stated that she was able to do these things and did not state that she needed any assistance. (ECF 7–8 at 44.) In 2006, Plaintiff stated that her ability to handle money had changed since the onset of her illnesses in that she made math errors in balancing her checkbook. (ECF 7–7 at 61.) In 2009, Plaintiff made no such comment. Rather she stated that she spent much less money because she could not decide what to buy or what she needed. (ECF 7–8 at 45.) In 2006, Plaintiff stated that she could pay attention for "maybe 10 mins., but usually 2–3 mins." (ECF 7–7.) In 2009, Plaintiff stated that she could pay attention for "10–15 min." (ECF 7-8 at 46.) In sum, where the 2009 Function Report indicated that Plaintiff's self-reported functional abilities since 2006 had not worsened in any material respect—and had actually *improved* in some respects— the Court cannot find that the ALJ committed prejudicial error warranting reversal of his decision.

The Court also rejects Plaintiff's contention because the evidence contained in the 2009 Function Report was largely cumulative to Plaintiff's more current testimony before the ALJ in 2011. The Plaintiff testified at length concerning her functional limitations. (ECF 7–3 at 7–34.) That testimony covered much of the substance of the 2006 and 2009 Function Reports. In his fifteen-page, single-spaced, detailed, and thorough decision, the ALJ explicitly referenced Plaintiff's testimony concerning her functional limitations. (ECF 7–2 at 28–29.) The Court cannot fairly find that the ALJ failed to consider the substance of the evidence that Plaintiff now claims the ALJ overlooked.

Because the Court has determined that the ALJ did consider evidence similar to that contained in the 2009 Function Report, the Court need not address Plaintiff's second argument that the ALJ committed legal error with respect to his credibility findings of Plaintiff's testimony. (*Id.*)

### 2. *Plaintiff's Third Objection*

Plaintiff's third and last objection is that the PF&R failed to address Plaintiff's arguments regarding the testimony of the vocational expert, Ms. Shapero. (ECF 17 at 3.) Plaintiff is correct that the PF&R does not address this argument. In her brief in support of her claim, Plaintiff specifically argues that the ALJ's hypothetical question to Ms. Shapero was flawed. (ECF 10 at 19–20.) While the PF&R briefly states that the ALJ posed a hypothetical question to the vocational expert (ECF 16 at 13), the PF&R does not address Plaintiff's specific argument. Accordingly, the Court will undertake this analysis anew.

In the fifth step of the sequential analysis, the ALJ must pose hypotheticals to a vocational expert that "fairly set out all of [the] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (alteration in original); *see also Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (stating that hypotheticals must "adequately" describe a claimant's impairments). However, the ALJ need only include those limitations supported by the record in the hypotheticals. *Johnson*, 434 F.3d at 659. Nor is an ALJ required to "submit to the vocational expert every impairment alleged by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (stating that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*" and that the limitations must be medically established.).

Plaintiff argues that the hypothetical question posed to Ms. Shapero was legally inadequate because it failed to fairly set forth all of Plaintiff's limitations and impairments. (ECF 17 at 4.) More specifically, Plaintiff contends that the ALJ's hypothetical question was deficient because it failed to state that: (1) Plaintiff needed to use lists of daily reminders; and (2) Plaintiff should work in a setting with few distractions. (ECF 17 at 4.)

Plaintiff's first contention fails because, as Plaintiff does not dispute, the evidence that Plaintiff needed to use a list of daily reminders was not objective medical source evidence, but rather Plaintiff's own testimony before the ALJ. The ALJ considered but rejected Plaintiff's testimony in several respects, including Plaintiff's testimony about the extent of her memory problems. The ALJ specifically found that Plaintiff's testimony regarding her cognitive functioning was not fully credible because Plaintiff exaggerated the degree of her limitations, and the ALJ properly tied this finding to specific contradictory objective medical evidence in the record. (*See* ECF 7–2 at 34.) Accordingly, the ALJ was not obligated to incorporate Plaintiff's claimed limitation into his hypothetical question and there is no error in this regard.

Plaintiff's second challenge to the hypothetical question likewise lacks merit. Plaintiff states in her objections to the PF&R that the ALJ failed to include the limitation noted by one of the State agency psychologists, Holly Cloonan, Ph.D. Dr. Cloonan opined in her mental residual functional capacity assessment of Plaintiff that Plaintiff has "moderate limits in [functional capacity] associated [with] her mental condition. She is able to learn and perform uncomplicated work-like activities in a setting [with] few distractions." (ECF 7–23 at 27.) The ALJ asked Ms. Shapero a series of hypothetical questions concerning whether a hypothetical 45- to 49-year-old person with stated physical limitations would be able to perform Plaintiff's past work as a nurse.

9

(*See* ECF 7–3 at 36–37). Ms. Shapero testified that Plaintiff had the capacity to perform her prior work with the stated limitations. However, the ALJ's third hypothetical question asked Ms. Shapero to further assume that Plaintiff, in addition to the hypothetical physical limitations, was also "limited to low stress work with only occasional changes in the work setting and judgment is required on the job involving simple, routine and repetitive tasks." (*Id.* at 37.) Ms. Shapero testified that with these additional assumed limitations, Plaintiff would not be able to perform her past work. Ms. Shapero then testified, however, that there were jobs available in the local, regional, and national economies that Plaintiff could perform, namely, the work of a mail clerk, a price marker, and a sorter. The Court cannot find that the ALJ's hypothetical question that specifically stated that Plaintiff should work in "low stress" workplaces "with only occasional changes in the work setting" did not fairly equate with Dr. Cloonan's opinion that Plaintiff's workplace should have few distractions.

Moreover, Plaintiff offered no development of this objection. She simply states that the limitation that Plaintiff work in a place with few distractions was not included. She did not offer any discussion or argument why the Court should find that the hypothetical did not fairly encompass this limitation. Assuming an error was made, she offers no argument why the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (stating that the burden of showing that an error is harmful normally falls on the party attacking the agency's determination). Here, however, there was no error because, as just noted, the ALJ's hypothetical fairly and "adequately" captures the substance of Dr. Cloonan's opinion.

In addition to her attack on the form of the ALJ's hypothetical question, Plaintiff also claims the ALJ erred because some courts have found that the work of a "mail clerk" involves

10

more than simple, routine, and repetitive tasks and, thus, a mail clerk position requires a functional capacity beyond the limitations assumed in the ALJ's hypothetical. (ECF 17 at 4–5.) None of the three courts cited by Plaintiff, however is within the Fourth Circuit and are not binding on this Court. Further, as noted by the Commissioner, the vocational expert also testified that Plaintiff was capable of performing the work of a price marker and a sorter, work that falls within the contours of the ALJ's hypothetical question. Accordingly, the Court rejects Plaintiff's attack on step five of the Commissioner's sequential analysis.

Finally, Plaintiff cites a recent decision from this Court, *Jones v. Astrue*, Civil Action No. 6:11-cv-00721, 2013 WL 209484 (S.D. W. Va. Jan. 17, 2013), in support of his last argument. In *Jones*, the Court adopted a recommendation and finding by former Magistrate Judge Mary E. Stanley that the Court reverse the decision of the Commissioner. Plaintiff claims that *Jones* stands for the proposition that "a hypothetical question to the vocational expert that describes the claimant's mental functioning only as limited to simple, repetitive and routine tasks is not a sufficient description to encompass a moderate limitation in concentration, persistence or pace." (ECF 17 at 5.) Plaintiff claims that Magistrate Judge Stanley cited three out-of-circuit cases in support of that proposition.

Plaintiff's reliance on *Jones* is misplaced for several reasons. First, Plaintiff neglects to state that in *Jones*, the Commissioner did not file any objections to Magistrate Judge Stanley's proposed findings and recommendation. Thus, the Court was not required to conduct a review, de novo or otherwise, of the factual or legal findings of the former magistrate judge. Second, Plaintiff misapprehends the *Jones* decision. In *Jones*, medical sources opined that Jones had certain social functioning limitations and mental status deficiencies because pain interfered with

11

her ability to stay on task. The magistrate judge faulted the ALJ for not including medical source opinions in either the ALJ's residual functional assessment or in his hypothetical questions to the vocational expert or explain why he rejected these limitations. The magistrate judge then stated:

> As noted above, the ALJ did not include severe mental impairments or pain in his hypotheticals to the vocational expert until the final hypothetical wherein the vocational expert responded that Claimant would be unable to perform any jobs. (Tr. at 50–51.) The undersigned proposes that the presiding District Judge find that the hypotheticals posed by the ALJ to the vocational expert were inadequate as they failed to take into consideration Claimant's difficulties with social functioning and how pain would interfere with Claimant's ability to stay on task.

*Jones v. Astrue*, Civil Action No. 6:11-cv-00721, 2013 WL 6892765 at *16 (S.D. W. Va. Nov. 27, 2012). Notably, nowhere in the magistrate judge's report do the cases that Plaintiff claims the magistrate judge cited appear.

Unlike *Jones*, where it appears the ALJ may not have adequately addressed certain medical source opinions when making his residual function assessment (or explain why he rejected those opinions), here the ALJ expressly noted and credited Dr. Cloonan's opinion that Plaintiff should work in a job that had "few distractions." (ECF 7–2 at 35.) Also, the Court finds that, unlike *Jones*, here the ALJ's hypothetical fairly and adequately characterized Dr. Cloonan's opinion. Thus, the Court rejects this final claim of error.

## IV. CONCLUSION

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** this case, and **DIRECTS** the Clerk to remove

12

this case from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:     September 23, 2013

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

13